IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

JOHN ROBERT JONES, JR.,

    Defendant.

CIVIL ACTION FILE

NO. 3:21-cv-98-TCB

## **O R D E R**

In this action, Plaintiff Securities and Exchange Commission ("SEC") filed a complaint against Defendant John Robert Jones, Jr. alleging that Jones, an investment adviser who offered and sold limited partnership interests to investors in two private PED index funds, falsely represented aspects of the investments, including that investors' principal was protected. Contrary to his representations, the funds lost between 48 and 66 percent of the investments. An entity that Jones controlled received $127,714 based on the funds.

The SEC and Jones reached a partial settlement in which Jones agreed to the entry of permanent injunctive relief. The consent judgment deems allegations of the complaint admitted and precludes Jones from arguing that he did not violate the federal securities laws as alleged in the complaint. The parties agreed that the issues of disgorgement, prejudgment interest, and a civil penalty would be resolved by the Court.

The SEC has filed a motion [9] in which it seeks disgorgement of the $127,714 plus prejudgment interest of $16,163.89. It also seeks a civil penalty of $195,047. Jones has responded, opposing the disgorgement amount, the prejudgment amount, and the civil penalty. Specifically, he claims $117,494.41 of business expenses and contends that the disgorgement should be reduced to approximately $10,000.[1] He argues that prejudgment interest should either not be awarded or should be reduced to the amount on the roughly $10,000. He also argues that a civil penalty is not appropriate.

---

[1] Jones does not contest the SEC's use of his company's fees of $127,714 as the amount of his gross gain.

In reply, the SEC agrees that $47,067.70 of Jones's proffered expenses are legitimate business expenses. It thus submitted a revised proposed disgorgement of $80,646.30 and prejudgment interest of $10,206.84. The SEC otherwise opposes Jones's requests. Specifically with respect to Jones's other claimed expenses—car expenses, meals, and payments to an individual—the SEC contends that Jones has failed to show that they were legitimate business expenses.[2]

The Court will first address the disgorgement and prejudgment interest award before turning to the civil penalty. Ultimately, the Court finds the amounts proposed in the SEC's reply brief to be correct.

Under 15 U.S.C. § 78u(d)(5), a disgorgement award not exceeding the amount of a wrongdoer's net profits and awarded for victims is permissible equitable relief. *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020). The SEC has the initial burden of producing a reasonable approximation of Jones's ill-gotten gains. *SEC v. Levin*, 849 F.3d 995,

---

[2] Jones has filed what the Court construes as a surreply in which he attempts to justify the remaining expenses. Although surreplies are not authorized as a matter of practice, the Court nonetheless has considered this additional brief and permitted the SEC to address the arguments made in the surreply.

1006 (11th Cir. 2017) (quoting *SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014)). Once it has done so, the burden shifts to Jones to demonstrate that the estimate is not reasonable. *Id.* (quoting *Monterosso*, 756 F.3d at 1337). If the SEC's measure is reasonable, any risk of uncertainty falls on Jones. *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004) (citations omitted). Jones has the burden of providing concrete, credible evidence to demonstrate the amount of money spent on alleged business expenses and to show that the expenses were legitimate. *CFTC v. Tayeh*, 848 F. App'x 827, 830 (11th Cir. 2021).

Jones's meals and mileage will not be deducted because he fails to show that they are legitimate business expenses. Instead, his "presentation meetings" appear to involve client recruitment efforts, which would be associated with his illegal activity. Such expenses are not entitled to deduction. *FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1327 (11th Cir. 2013) (per curiam) (quoting *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 375 (2d Cir. 2011)). And his meetings related to "operations" or "acct" similarly fail. With respect to meals, Jones has not shown why investors should be responsible for the costs of meals at

the meetings. And with respect to mileage, Jones has failed to show the purpose of the meetings and how they had value separate from furthering the fraud.

The $53,824 paid to Kyrus Frames also will not be deducted. Jones fails to show that Frames added any value to the funds or that the expenses are legitimate.

In sum, a disgorgement amount of $80,646.30 is appropriate.

The Court has discretion to award prejudgment interest on disgorgement. *SEC v. New Day Atlanta, LLC*, No. 1:10-cv-1333-TCB, 2013 WL 11904691, at *6 (N.D. Ga. Aug. 1, 2013). This is generally calculated based on the IRS underpayment rate and assessed on a quarterly basis. *See id.* The SEC's proposed prejudgment interest amount of $10,206.84 is appropriate.

The Court therefore calculates the disgorgement at $80,646.30 and prejudgment interest at $10,206.84.

The Court now turns to the issue of the civil penalty. A civil penalty is intended to punish the wrongdoer and to deter him and others from future securities violations. *Monterosso*, 756 F.3d at 1338

(citing *SEC v. Sargent*, 329 F.3d 34, 41 n. 2 (1st Cir. 2003)). The framework of 15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d) determines the appropriate penalty by setting forth three tiers of penalties that apply for each violation. The first tier applies to all violations; the second applies to violations involving fraud; the third applies to violations involving fraud resulting in or creating a substantial risk of substantial loss to other persons.

The SEC points out various factors that courts consider in determining a penalty amount, including (1) the egregiousness of the conduct; (2) the degree of scienter; (3) the risk of or actual substantial losses of others; (4) the recurrent nature of the conduct; and (5) the defendant's financial condition. *See SEC v. U.S. Pension Tr. Corp.*, No. 07-22570-CIV, 2010 WL 3894082, at *25 (S.D. Fla. Sept. 30, 2010).

The SEC requests a third-tier penalty of $195,047, the current third-tier maximum per violation by an individual.[3] The factors support the penalty the SEC seeks. Jones's conduct involved a high degree of

---

[3] Although there were 24 investors and a penalty for each violation is permissible, the SEC seeks a single penalty.

scienter. This included telling investors that there was loss protection—including insurance—when none existed, and making up a story about having developed his investment strategy in concert with a non-existent entity he called the "National Financial Research Laboratory." Investors suffered a loss of between 48 and 66 percent of their investment, and Jones's conduct was recurrent, involving multiple investors over a year. Thus, the first four factors support the imposition of a third-tier penalty. And although the Court may consider Jones's financial condition, this is at most one factor to consider.

Jones does not directly respond to the SEC's argument about the tiers of penalties and the factors to consider. Rather, his argument appears to be that he did disclose to investors that the funds were not guaranteed or insured against certain loss amounts. However, this contradicts the allegations in the complaint that, pursuant to the consent judgment, are deemed true for the purposes of this order.

The Court finds that a civil penalty of $195,047 is appropriate.

In sum, Jones is liable for disgorgement of $80,646.30, representing net profits gained as a result of the conduct alleged in the

7

complaint, together with prejudgment interest thereon in the amount of $10,206.84; and a civil penalty of $195,047 pursuant to Section 20(d) of the Securities Act of 1933 ("Securities Act") and Section 21(d)(3) of the Securities Exchange Act of 1934 ("Exchange Act"). Jones shall satisfy this obligation by paying $285,900.14 to the SEC within thirty days after entry of this final judgment.

Jones may transmit payment electronically to the SEC, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Jones may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered to

> Enterprise Services Center
> Accounts Receivable Branch
> 6500 South MacArthur Boulevard
> Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Jones as the Defendant in this

action; and specifying that payment is made pursuant to this final judgment.

Jones shall simultaneously transmit photocopies of evidence of payment and case identifying information to the SEC's counsel in this action. By making this payment, Jones relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to him.

The SEC may enforce the Court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any time after thirty days following entry of this final judgment.

The SEC may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 et seq., and moving for civil contempt for the violation of any Court orders issued in this action. Jones shall pay post-judgment interest on any amounts due after thirty days of the entry of this final judgment pursuant to 28 U.S.C. § 1961. The SEC shall hold the funds, together with any interest and income

earned thereon (collectively, the "fund"), pending further order of the Court.

The SEC may propose a plan to distribute the fund subject to the Court's approval. Such a plan may provide that the fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The Court shall retain jurisdiction over the administration of any distribution of the fund and the fund may only be disbursed pursuant to an order of the Court.

This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this final judgment and the judgment [8] entered September 23, 2021, the provisions of which remain in effect.

IT IS SO ORDERED this 7th day of July, 2022.

_____
Timothy C. Batten, Sr.
Chief United States District Judge